**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Sherrie Rena Garcia,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of the Social Security Administration,<br><br>    Defendant. | No. CV-11-1193-PHX-BSB<br><br>**ORDER** |

Sherrie Rena Garcia (Plaintiff) seeks judicial review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security (the Commissioner) denying her applications for disability insurance benefits and supplemental security income benefits under the Social Security Act. The parties have consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and have filed briefs in accordance with Local Rule of Civil Procedure 16.1. For the following reasons, the Court remands this matter for further proceedings.

**I. Procedural History**

On October 15, 2007, Plaintiff applied for disability insurance benefits, 42 U.S.C. §§ 401-34, and supplemental security income, 42 U.S.C. § 1381-83f, under Titles II and XVI of the Social Security Act (the Act) and alleged disability with an onset date of

1 September 1, 2002. (Tr. 15.[1]) Plaintiff later amended the onset date to January 1, 2005.
2 (Tr. 32.) After the Commissioner denied Plaintiff's claims at the initial and reconsideration
3 levels, she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 15.) After
4 conducting a hearing, ALJ M. Kathleen Gavin issued a decision on December 30, 2009
5 denying Plaintiff's claims. (Tr. 5-22.)

6 The ALJ's decision became the final decision of the Commissioner when the Social
7 Security Administration Appeals Council denied Plaintiff's request for review. (Tr. 1-5); *see*
8 20 C.F.R. § 404.981 (explaining the effect of a disposition by the Appeals Council). Having
9 exhausted the administrative review process, Plaintiff timely appealed the Commissioner's
10 final determination pursuant to 42 U.S.C. § 405(g) by filing her Complaint with this Court.[2]

11 **II. Administrative Hearing Testimony**

12 At the time of the administrative hearing, Plaintiff was in her fifties. She had a ninth
13 grade education and a sporadic work history consisting of jobs that she held for a few weeks
14 to a few months, including a job at a paint factory spray painting cell phone covers. (Tr. 33,
15 35-38.) Plaintiff testified that she could not work because of constant pain in her neck,
16 shoulders, elbows, hands, back, hips, groin, knees, shinbones, and toes, nausea, and
17 emotional difficulties. (Tr. 38, 39, 41, 48.) Plaintiff also testified that during a typical day
18 she would get up around 10:00 a.m. or 11:00 a.m., eat breakfast, and then lay down. She
19 would usually nap two or three times a day for one to two hours at a time. (Tr. 43.) A friend
20 would take Plaintiff grocery shopping and she prepared food "from a can" or that she could
21 cook in the microwave. (Tr. 44.) Plaintiff did not do housework or yard work, and had no
22 hobbies. (Tr. 44-45.)

---

[1] Citations to "Tr." are to the administrative transcript located at docket 30.

[2] Plaintiff clarifies that the present action is for a closed period of disability from her disability onset date, January 1, 2005, through November 21, 2010, the day before she was found disabled on a subsequent application for disability insurance benefits. (Doc. 35 at 3.)

A vocational expert, Victoria Rei, also testified at the hearing and classified Plaintiff's past relevant work at the paint factory as light, unskilled work. (Tr. 50.) When the ALJ posed a hypothetical question that assumed that Plaintiff had the ability to perform work at the light exertional level, and "no more than occasional postural functions, simple, unskilled work, and . . . minimum contact with the general public," the vocational expert testified that Plaintiff could perform her past work at a paint factory. (Tr. 50.) The vocational expert, however, testified that Plaintiff could not sustain work in response to a separate hypothetical that assumed Plaintiff had: (1) the limitations that treating rheumatologist Stuart Posner, M.D. assessed; (2) the limitations that treating nurse practitioner Susan Anderson assessed, and (3) the limitations included in Plaintiff's symptom testimony.[3]

### III. The ALJ's Decision

A claimant is considered disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A) (nearly identical standard for supplemental security income disability insurance benefits). To determine whether a claimant is disabled, the ALJ uses a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

In the first two steps, a claimant seeking disability benefits must initially demonstrate (1) that he is not presently engaged in a substantial gainful activity, and (2) that his disability is severe. 20 C.F.R. § 404.1520(a)-(c). If a claimant meets steps one and two, he may be found disabled in two ways in steps three and four. At step three, he may prove that his impairment or combination of impairments meets or equals an impairment in the Listing of

---

[3] The transcript of the hearing indicates that the ALJ considered Dr. Posner's assessment, hearing exhibit 13F (Tr. 319-21), and Nurse Practitioner Anderson's assessment, hearing exhibit 18F (Tr. 409-10). (Tr. 53-55.)

- 3 -

1  Impairments found in Appendix 1 to Subpart P of 20 C.F.R. pt. 404. 20 C.F.R.
2  § 404.1520(a)(4)(iii). If so, the claimant is presumptively disabled. If the claimant cannot
3  make this showing, the ALJ proceeds to step four. At step four, a claimant must prove that
4  his residual functional capacity (RFC) prevents him from performing his past work.
5  20 C.F.R. § 404.1520(a)(4)(iv). If the claimant establishes this prima facie case, the burden
6  shifts to the government at step five to establish that the claimant can perform other jobs that
7  exist in significant number in the national economy, considering the claimant's RFC, age,
8  work experience, and education. If the government does not meet this burden, then the
9  claimant is considered disabled within the meaning of the Social Security Act. *Bray v.*
10 *Comm'r of Soc. Sec. Admin*, 554 F.3d 1219, 1222-23 (9th Cir. 2009).

11 Applying the five-step sequential evaluation process, the ALJ first found that Plaintiff
12 had not performed substantial gainful activity during the relevant period. At step two, the
13 ALJ found that Plaintiff had three medically determinable impairments — fibromyalgia,
14 carpal tunnel syndrome, and depression — but that those impairments were not severe when
15 considered alone or in combination and therefore Plaintiff was not disabled under the Act.
16 (Tr. 17-22.) The ALJ found that Plaintiff did not satisfy step two and therefore concluded
17 her analysis without considering the remaining steps. (Tr. 12-27.)

18 **IV. Standard of Review**

19 The district court has the "power to enter, upon the pleadings and transcript of record,
20 a judgment affirming, modifying, or reversing the decision of the Commissioner of Social
21 Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The
22 district court reviews the Commissioner's final decision under the substantial evidence
23 standard, and the court must affirm the Commissioner's decision if it is supported by
24 substantial evidence and it is free from legal error. *Smolen v. Chater*, 80 F.3d 1273, 1279
25 (9th Cir. 1996); *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

26 Even if the ALJ erred, however, "[a] decision of the ALJ will not be reversed for
27 errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Substantial

28

1 evidence means more than a mere scintilla, but less than a preponderance; it is "such relevant 2 evidence as a reasonable mind might accept as adequate to support a conclusion." 3 *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted); *see also Webb v.* 4 *Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

5 To determine whether substantial evidence supports a decision, the court considers 6 the record as a whole and "may not affirm simply by isolating a specific quantum of 7 supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation 8 and citation omitted). The court also may not "affirm the ALJ's . . . decision based on 9 evidence that the ALJ did not discuss." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 10 2003); *see also SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (a reviewing court "must 11 judge the propriety of [administrative] action solely by the grounds invoked by the agency" 12 and stating that if "those grounds are inadequate or improper, the court is powerless to affirm 13 the administrative action by substituting what it considers to be a more adequate or proper 14 basis").

15 The ALJ is responsible for resolving conflicts in testimony, determining credibility, 16 and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). 17 "When the evidence before the ALJ is subject to more than one rational interpretation, [the 18 court] must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 19 1190, 1198 (9th Cir. 2004) (*citing Andrews*, 53 F.3d at 1041).

20 **V. Discussion**

21 Plaintiff asserts that the ALJ erred by (1) concluding that Plaintiff failed to 22 demonstrate the existence of any severe impairments, (2) rejecting the assessment of treating 23 rheumatologist, Dr. Posner, and treating psychiatric nurse practitioner, Anderson, and 24 (3) rejecting Plaintiff's symptom testimony without providing clear and convincing reasons 25 for doing so. Plaintiff asks the Court to remand her case for a determination of disability

1  benefits. As set forth below, the Court agrees that the ALJ erred because her finding that
2  Plaintiff's fibromyalgia was non-severe is not supported by substantial evidence.[4]

### A. Non-Severity Finding at Step Two of the Sequential Evaluation

Plaintiff contends that the ALJ erred by improperly concluding at step two of the sequential evaluation process that Plaintiff did not have a severe medically determinable impairment. At step two of the sequential evaluation process, a claimant has the burden of presenting evidence of medical signs, symptoms, and laboratory findings that establish a medically determinable physical or mental impairment that is severe, and that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1004–1005 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)); *see* 20 C.F.R. §§ 404.1520, 416.920. Substantial evidence supports an ALJ's determination that a claimant is not disabled at step two if "there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment." *Id*. (quoting Social Security Ruling (SSR) 96–4p, 1996 WL 374187, at *1–*2).

Step two is "a *de minimis* screening device [used] to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. Applying the standard of review to the requirements of step two, a court must determine whether substantial evidence supports the ALJ's finding that the medical evidence established that the claimant did not have a medically severe impairment or combination of impairments. *Webb*, 433 F.3d at 687 (9th Cir. 2005) (citation omitted); *see also Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here."). An ALJ

---

[4] Plaintiff also contends that the ALJ erred in failing to find her carpal tunnel syndrome and depression were severe impairments. Because the ALJ erred by finding that Plaintiff's fibromyalgia was non-severe, the Court does not reach these issues or Plaintiff's other claims.

- 6 -

1  properly finds that an impairment or combination of impairments are "not severe" only if the
2  evidence establishes a slight abnormality that has "no more than a minimal effect on an
3  individual's ability to work." *Webb*, 433 F.3d at 686 (citation omitted).

### B. Medical Evidence of Plaintiff's Fibromyalgia

Plaintiff's primary care physician, Jean Paul, D.O., diagnosed Plaintiff with fibromyalgia on March 28, 2005 and continued that diagnosis at Plaintiff's subsequent appointments. (Tr. 248, 247, 246, 245, 242.) Dr. Paul noted that Plaintiff had "right-sided pain, back pain, and wrist pain." (Tr. 242.) He found "tender points consistent with fibromyalgia." (Tr. 242.) Dr. Paul referred Plaintiff to rheumatologist, Stuart Posner, M.D. (Tr. 243, 322-324.) Dr. Posner noted on several occasions that Plaintiff had "sleep disturbance," "generalized achiness" and fatigue, "fibrositic soft tissue trigger point areas," "generalized musculoskeletal discomfort," "characteristic features of exquisite trigger point tenderness in the upper and lower extremities exceeding 11 of the 18 typical fibrositic criteria," and "multiple-site soft trigger point tenderness." (Tr. 324, 323, 322.) Dr. Posner consistently diagnosed fibromyalgia. (*Id*.) In March 2008, consultative agency examining physician, Richard Palmer, M.D., also found that Plaintiff had 11 out of 18 classical myofascial tender points and diagnosed fibromyalgia. (Tr. 263.) Dr. Palmer found Plaintiff limited to light work. (Tr. 263-264.)

On February 18, 2009, Dr. Posner completed a Fibromyalgia Residual Functional Capacity Questionnaire. (Tr. 319-21.) Dr. Posner found that Plaintiff suffered from moderately severe pain and fatigue that "seriously affects [her] ability to function." (Tr. 320.) He also found that Plaintiff's pain and fatigue frequently interfered with her attention and concentration and caused "deficiencies" in her "concentration, persistence or pace resulting in failure to complete tasks in a timely manner." (Tr. 321.) Dr. Posner concluded that Plaintiff was unable to sustain work on a regular and continuing basis. (Tr. 319-21.)

### C. Severe Physical Impairment

Plaintiff has presented sufficient evidence that her fibromyalgia is a severe physical impairment because it has a more than minimal effect on her ability to perform work-related functions.[5] As noted above, Dr. Posner's notes reflect that (1) during his physical examination of Plaintiff, he identified 11 out of 18 "fibromyalgia tender points" in Plaintiff's body (Tr. 323); (2) Plaintiff consistently complained of "generalized musculoskeletal discomfort," fatigue, and sleep disturbance (Tr. 322, 323); and (3) Dr. Posner consistently diagnosed Plaintiff with fibromyalgia. (Tr. 322-24.)

The ALJ rejected Dr. Posner's assessment of the severity of Plaintiff's fibromyalgia because there were no supporting laboratory or other objective findings. (Tr. 20.) The ALJ did not identify the laboratory findings that would support an assessment of fibromyalgia and could not do so because there are no such laboratory tests for the presence or severity of fibromyalgia. *See Alvarado v. Chater*, 1997 WL 43008, at *1-2 (E.D. Pa. Jan. 24, 1997) (finding reversible error when ALJ relied upon lack of objective laboratory testing to find that fibromyalgia claim was not credible).

Instead, courts have held that a physical examination which, *inter alia*, assesses the location and severity of a patient's pain and tests whether a patient has tenderness at a certain number of fixed locations on his body is a medically acceptable technique for diagnosing the condition. *See e.g., Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001) (recognizing that "[t]he principal symptoms [of fibromyalgia] are 'pain all over,' fatigue, disturbed sleep, stiffness, and 'the only symptom that discriminates between it and other diseases of a rheumatic character' multiple tender spots, more precisely 18 fixed locations on the body . . . that when pressed firmly cause the patient to flinch") (citation and internal

---

[5] The Commissioner defends the non-severity finding based on Plaintiff's sporadic treatment. (Doc. 40 at 10-11, 12-13.) Because the ALJ did not rely on this rationale in support of her findings, the Court may not affirm the ALJ's decision based on that evidence. *See Connett*, 340 F.3d at 874; *see also Chenery Corp.*, 332 U.S. at 196.

- 8 -

quotation marks omitted); *Perl v. Barnhart*, 2005 WL 579879, *3 (E.D. Pa. Mar. 10, 2005) ("[R]eports from treating physicians that document symptoms [are important] in determining residual functional capacity of claimant suffering from fibromyalgia because such observations may be the only type of 'medically acceptable clinical technique' available.") (citation omitted); *see also* SSR 99–2p, n.3 (Social Security Administration follows criteria the American College of Rheumatology's criteria to determine whether a claimant has fibromyalgia). In this case, Dr. Posner found that Plaintiff's "[p]revious findings of soft tissue tenderness are consistent with the diagnosis of fibromyalgia, particularly in light of the previously negative laboratory profile."[6] (Tr. 323.) The ALJ erred "by effectively requiring objective evidence for a disease that eludes such measurement." *See Benecke*, 379 F.3d at 594.

The ALJ also concluded that Plaintiff's fibromyalgia was not a severe impairment because the medical record included findings that Plaintiff had normal muscle tone, sensation, and gait. (Tr. 19-20.) Upon initial evaluation, Dr. Posner found that Plaintiff's "[n]eurological examination was without obvious focal, motor or sensory abnormality." (Tr. 324.) These findings are not inconsistent with Dr. Posner's assessment of fibromyalgia. "In stark contrast to the unremitting pain of which fibrositis patients complain, physical examinations will usually yield normal results — a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." *Preston v. Sec. of Health and Human Servs.*, 854 F.2d 815, 817-18 (6th Cir. 1988). "[F]ibrositis patients manifest normal muscle strength and neurological reactions and have a full range of motion. Thus, the standard clinical tests and observations . . . to detect neurological and orthopaedic disease [are] of little aide or relevant in the diagnosis of . . . disabling fibrositis, except as a means of excluding certain neurologic or orthopaedic causes . . . ." *Id.* at 820.

---

[6] Dr. Posner ordered laboratory testing to rule out other causes of Plaintiff's pain and fatigue. (*See* Tr. 324.)

- 9 -

1  The ALJ also rejected Dr. Posner's assessment of the severity of Plaintiff's
2  fibromyalgia because she found that Plaintiff was "noncompliant with medications intended
3  to alleviate her symptoms." (Tr. 21.)  The record, however, indicates that Plaintiff was
4  intolerant of several of her medications. For example, treatment notes indicate that Plaintiff
5  "had a panicky reaction [to Imitrex 100 mg] with palpitations, shortness of breath," and
6  insomnia. (Tr. 283.) In addition, Plaintiff could not take Tylenol or other "NSAID [non-
7  steroidal anti-inflammatory drugs] therapy" because they upset her stomach. (Tr. 280, 283,
8  323-324.)  Dr. Posner noted that there were limited options for treating Plaintiff's
9  fibromyalgia due to her "intolerance of previous medication." (Tr. 323.)

10  Considering Dr. Posner's fibromyalgia diagnosis and other findings during his
11  examinations of Plaintiff (such as generalized musculoskeletal pain, fatigue, and sleep
12  disturbance), the Court cannot conclude that substantial evidence supports the ALJ's finding
13  that Plaintiff's fibromyalgia had no more than a minimal effect on her ability to work. Thus,
14  the ALJ erred by finding that Plaintiff's fibromyalgia was not severe. The ALJ's error was
15  not harmless. The ALJ did not find any other severe impairments and thus stopped the
16  sequential evaluation process at step two. *But see Hines v. Asture*, 2012 WL 1394396, *12
17  (D. N.H. Mar. 26, 2012) (ALJ's failure to find fibromyalgia a severe impairment was, at
18  most, harmless error because the ALJ found other severe impairments and proceeded to
19  determine claimant's residual functional capacity, which is an assessment the ALJ makes
20  based on consideration of limitations imposed by all of an individuals impairments, including
21  those that are not severe). Accordingly, this error was not inconsequential to the ultimate
22  determination that Plaintiff was not disabled. *See Stout v. Comm'r Soc. Sec. Admin.*, 454
23  F.3d 1050, 1055 (9th Cir. 2006) (ALJ's error is harmless where it is "inconsequential to the
24  ultimate nondisability determination").

25  **VI. Conclusion**

26  Having found that the ALJ erred at step two of the sequential evaluation process, the
27  Court must determine whether to remand for a determination of benefits or for further

- 10 -

1  proceedings. *Smolen*, 80 F.3d at 1292. "[R]emand for further proceedings is unnecessary
2  if the record is fully developed and it is clear from the record that the ALJ would be required
3  to award benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001).
4  Specifically, benefits should be awarded when "(1) the ALJ has failed to provide legally
5  sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues
6  that must be resolved before a determination of disability can be made, and (3) it is clear
7  from the record that the ALJ would be required to find the claimant disabled were such
8  evidence credited." *Smolen*, 80 F.3d at 1292; *see also McCartey v. Massanari*, 298 F.3d
9  1072, 1076-77 (9th Cir. 2002).

10  However, "[r]emand for further proceedings is appropriate where there are
11  outstanding issues that must be resolved before a determination can be made, and it is not
12  clear from the record that the ALJ would be required to find claimant disabled if all the
13  evidence were properly evaluated." *Hill*, 2012 WL at *8 (citing *Vasquez v. Astrue*, 572 F.3d
14  586, 593 (9th Cir. 2009)).  Here, the record indicates that Plaintiff's fibromyalgia can be
15  considered "severe" within the meaning of the Social Security Act.  However, Plaintiff's
16  fibromyalgia might not prevent her from performing work in the national economy.

17  Because issues remain regarding Plaintiff's residual functional capacity and her ability
18  to perform other work existing in significant numbers in the national economy, this matter
19  must be remanded to the Commissioner for further administrative proceedings. Although the
20  Court did not address Plaintiff's other claims of severe impairment due to carpel tunnel
21  syndrome and depression, on remand, the ALJ should consider   claimant's residual
22  functional capacity based on the limitations imposed by all of Plaintiff's impairments,
23  including those that are not severe. *See Hines*, 2012 WL 1394396, *12.

24  Accordingly,
25  / / /
26  / / /
27  / / /
28
- 11 -

**IT IS ORDERED** that this matter is **REMANDED** for further findings as set forth in this Order and the Clerk of Court is directed to terminate this action.

DATED this 23rd day of January, 2013.

*Bridget S. Bade*
Bridget S. Bade
United States Magistrate Judge